### In re CADWALLADER.

#### (At Chambers, in St. Louis, Mo. February 10, 1904.)

1. DESERTION—LIMITATION OF COURT-MARTIAL—TIME OF PEACE.

   A soldier who deserted after the signing of the protocol between the United States and Spain, and while a state of peace actually existed, and nothing remained to be done to conclude peace, except the settlement of the details of the treaty, is within Act April 11, 1890, c. 78, 26 Stat. 54 [U. S. Comp. St. 1901, p. 968], providing that no person shall be court-martialed for desertion in time of peace, and not in the face of an enemy, committed more than two years before his arraignment therefor; said limitation not to begin till the end of his term of enlistment.

2. SAME—JURISDICTION—MILITARY COURT.

   A deserter from the army, who has never been discharged from the service, is still subject to the jurisdiction of a military tribunal, so that, though he may plead the statute of limitations as a defense to a prosecution for desertion, a civil court will not interfere with such a prosecution by a military tribunal before that court has acted on and decided the case.

Lieut. Watson, U. S. A., for petitioner.
Capt. Sloam, U. S. A., for respondent.

THAYER, Circuit Judge. On January 18, 1904, a writ of habeas corpus was issued, at the instance of the petitioner, against Col. George S. Anderson, U. S. A., commanding officer at Jefferson Barracks, Mo., requiring him to appear on January 23, 1904, to show by what authority he held the petitioner, George F. Cadwallader, in custody. The hearing appointed to be held on January 23, 1904, was deferred until February 10, 1904, on which day the respondent, Anderson, filed his return to the writ. The facts, as developed by the

127 F.—56

petition for the writ and by the return thereto, are not disputed, and are as follows: On May 31, 1898, Cadwallader enlisted in the army of the United States for the term of three years. On October 16, 1898, while his regiment was stationed at Huntsville, Ala., the petitioner deserted the service, and returned to the city of St. Louis, Mo., where he has since resided. On October 27, 1903, he was arrested for desertion at Sherwood, Mo., and has since been confined in the guardhouse at Jefferson Barracks, Mo., awaiting trial for the offense of desertion before a military court-martial. Formal charges against him for desertion have already been preferred, and he is now awaiting trial before the military court. While thus confined he applied for a writ of habeas corpus, which was issued, as heretofore stated.

An act of Congress which was approved on April 11, 1890 (26 Stat. 54, c. 78 [U. S. Comp. St. 1901, p. 968]), amends the 103d article of rules and articles of war by adding thereto the following provision:

"No person shall be tried or punished by a court martial for desertion in time of peace and not in the face of an enemy, committed more than two years before the arraignment of such person for such offense, unless he shall meanwhile have absented himself from the United States, in which case the time of his absence shall be excluded in computing the period of limitation: provided, that said limitation shall not begin until the end of the term for which said person was mustered into service."

On August 12, 1898 (30 Stat. 1780), President McKinley issued a proclamation announcing that a protocol had been concluded and signed at Washington by the United States and a representative for the government of Spain, formally agreeing upon the terms on which negotiations for the establishment of peace between the two countries should be undertaken. In conformity with such protocol, which had been agreed upon and signed, the President declared and proclaimed that hostilities between the two countries should be suspended, and directed that orders be immediately given to the commanders of the military and naval forces of the United States to abstain from all acts inconsistent with his proclamation. Thereafter all United States troops were withdrawn from the theater of war, except those necessary for the protection of property and the police of the Island of Cuba. The Spanish troops in the island were returned to Spain, and on September 17, 1898, the United States began mustering out of service the troops which had been enlisted for service during the Spanish War. From and after the signing of the protocol, a state of peace in fact existed between the United States and Spain, and between the United States and all other countries. What remained to be done after the signing of the protocol was to settle the details of the treaty between the United States and Spain, whereby peace was concluded. This treaty was concluded and signed by the representatives of the two countries at Paris on December 10, 1898. Ratifications were exchanged at Washington on April 11, 1899, and the President's proclamation announcing the final conclusion of the treaty was published on April 11, 1899 (30 Stat. 1754).

The petitioner's term of enlistment expired on May 30, 1901. He was not arrested for desertion until after the lapse of two years and

six months; his arrest having taken place on October 27, 1903. The petitioner insists that he deserted "in time of peace and not in the face of an enemy," and that, as more than two years expired after the end of the term for which he was mustered into service before he was apprehended for desertion, the limitation prescribed by the act of Congress of April 11, 1890, supra, has run, and that he cannot now be successfully prosecuted for desertion. I am of opinion that the petitioner is probably right in this contention. When he deserted the United States was practically at peace with Spain and with all other nations. While it is true that all the details of the treaty of peace had not been arranged, yet it was understood that the war was at an end, and would not be further prosecuted. The United States recognized that fact by commencing to disband its army, and had mustered out many of its regiments before the petitioner deserted. Desertion in time of peace is not as grave an offense as desertion when a state of war prevails, and Congress has recognized that fact by prescribing a short period of limitation, after the expiration of which a soldier who deserts his colors in time of peace shall not be prosecuted. The expression found in the act of Congress of April 11, 1890, supra, to the following effect, "in time of peace and not in the face of an enemy," when fairly interpreted means, I think, that, to entitle a soldier to claim the benefits of that act, it must appear that he did not desert in time of war, or while it was flagrant. A soldier who deserts in time of war, although he may be far distant from the scene of hostilities, in fact deserts in the face of an enemy, because he is liable to be called upon to confront the enemy at any moment. The words "in the face of an enemy" ought not to be taken literally, and held to mean that the soldier, when he deserts, must be in the immediate presence of an opposing force. If he is a long distance away, but war is at the time flagrant, and he is liable to be called upon at any moment to be sent forward and to confront an enemy, his desertion under such circumstances, in my judgment, takes place "in the face of an enemy," within the contemplation of the act of Congress, and is a grave offense, and one who deserts under such circumstances is not entitled to the benefit of the statute. On the state of facts developed in the present case, it cannot be fairly said, I think, that Cadwallader deserted in time of war and in the face of an enemy, and that he is therefore not entitled to the benefit of the statute. His desertion took place after peace had been attained, and war was practically at an end. Such was the understanding of the public, and the theory upon which both of the belligerent nations acted. This much is said because the questions aforesaid were discussed before me in argument.

While I entertain the foregoing views, I am of the opinion that an order discharging the petitioner ought not to be made at the present time by the civil authorities. The petitioner has never as yet been discharged from the service, and, as he has not been discharged, he is subject to the jurisdiction of a military tribunal. The fact that he may plead the statute of limitations as a defense to a prosecution for desertion is not sufficient, in my judgment, to warrant a civil court in interfering with a prosecution for the offense before a military tri-

bunal before that court has acted upon the case and decided it. The military court, in my opinion, has jurisdiction of the person of the petitioner, he never having been discharged from the army, and the power to determine whether the plea of limitation which he interposes is a good and sufficient defense. For this reason—that is to say, because the military court has jurisdiction over the person of the petitioner, and the power to determine whether the prosecution is barred by limitation—I decline to interfere at this time, and direct that the writ be discharged.